IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as receiver for AMERICA WEST BANK, L.C., <br><br>    Plaintiff, <br><br> v. <br><br> AMERICA WEST BANK MEMBERS, L.C., DOUGLAS DURBANO, and DURBANO LAW FIRM, P.C., <br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE AN UNTIMELY ANSWER AND COUNTERCLAIMS <br><br> Case No. 1:23-cv-00087-JNP-DAO <br><br> District Judge Jill N. Parrish |

Before the court is a motion for leave to file an untimely answer and counterclaims filed by defendants America West Bank Members, L.C., Douglas Durbano, and Durbano Law Firm, P.C. (collectively, defendants). ECF No. 61. The motion is GRANTED IN PART and DENIED IN PART. The court grants the motion to the extent that the defendants seek leave to file an answer to plaintiff Federal Deposit Insurance Corporation's (FDIC's) complaint. The court denies leave to file the untimely counterclaims.

## BACKGROUND

America West Bank, L.C. (AWB) was a bank regulated by the Utah Department of Financial Institutions (UDFI). Durbano was the President, CEO, General Counsel, and Chairman of the Board of Directors of AWB. America West Bank Members, L.C. (AWBM) was a bank holding company that owned AWB. Durbano is the registered agent, majority owner, and managing member of AWBM. Durbano also owns a law firm called Durbano Law Firm, P.C. (Durbano Law).

On May 1, 2009, the UDFI closed AWB after concluding that it was in financial trouble. That same day, the FDIC was appointed as AWB's receiver. By operation of law, the FDIC obtained all rights to the books, records, and assets of AWB. On May 4, 2009, a court ordered Durbano and Durbano Law to deliver to the FDIC "any hard drive, computer or other electronic storage device that contains any copy, partial or complete, of America West Bank's software, or data, including but not limited to customer personally identifiable information." On May 5, 2009, counsel for Durbano and Durbano Law delivered to the FDIC what it assumed to be all items covered by the court order.

In June 2011, AWBM sued the UDFI in state court, alleging that it had wrongfully closed AWB. After the suit was dismissed without prejudice, AWBM refiled the lawsuit in December 2015. When AWBM filed an amended complaint adding federal claims in March 2016, the UDFI removed the case to federal court. In June 2023, Judge Waddoups granted summary judgment in favor of the UDFI. The Tenth Circuit affirmed.

During AWBM's lawsuit against the UDFI, the FDIC became aware of representations made by Durbano Law that AWBM had taken possession of a locked storage cabinet from the former AWB offices. Durbano Law further represented that AWBM had taken possession of AWB documents, electronic recording devices, CD-ROMs containing AWB employee emails, Microsoft Outlook files, multiple banker's boxes of AWB's files and records, and multiple AWB computers and electronic files. AWBM also stated that it had taken possession of AWB records and digital data. After discovering these representations, the FDIC demanded that the defendants deliver these items to the FDIC as the receiver for AWB. The defendants refused.

In August 2023, the FDIC sued the defendants, asserting claims for conversion, writ of replevin, and injunctive relief. In this lawsuit, the FDIC seeks an order requiring the defendants to

2

turn over AWB's records and digital data. The defendants moved to dismiss the action. On August 27, 2024, the court denied the motion to dismiss. Thus, the defendants' answer to the complaint was due by September 11, 2024. The defendants represent that because they miscalendared the due date, they failed to file a timely answer. On September 12, 2024, the defendants contacted the FDIC and requested a stipulation to extend the answer deadline by 30 days, which would establish an October 10, 2024 due date. The FDIC responded that it would agree to only a 16-day extension of time. Later that day, the defendants filed a stipulated motion to extend the answer deadline by 16 days. The court granted the motion and set the answer deadline for September 27, 2024.

The defendants represent that they again miscalendared the answer deadline as October 10, 2024: the due date for which they had initially asked the FDIC to stipulate. Accordingly, the defendants missed the September 27, 2024 answer deadline. On October 2, 2024, the court issued a docket text order stating that the defendants had missed their answer deadline and ordering the parties to file a status report within 14 days. On October 16, 2024, the defendants filed a motion for leave to file their untimely answer and counterclaims—19 days after the September 27, 2024 deadline had passed. The defendants also filed their answer and counterclaims asserted by AWBM against the FDIC and one of its former employees, Pat Pitman. In its counterclaims, AWBM asserts the same state and federal constitutional claims that it had unsuccessfully asserted against the UDFI. AWBM contends that the FDIC and Pitman are liable for the harms caused when the UDFI closed AWB because the UDFI acted at the behest of the FDIC.

## ANALYSIS

Because the defendants' request to file untimely counterclaims and its request to file an untimely answer implicate different policy considerations, the court considers them separately.

I.      **REQUEST TO FILE UNTIMELY COUNTERCLAIMS**

Under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, a court may grant a motion for extension of time filed after the deadline has passed if it finds that the movant's tardiness was caused by excusable neglect. In determining whether the movant's neglect is excusable, courts consider the four *Pioneer* factors: "the danger of prejudice to [the nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *City of Chanute, Kan. v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994) (alteration in original) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). A court's determination of whether a party's neglect in failing to meet the deadline is excusable, "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395.

Weighing these factors, the court finds that the defendants' neglect in failing to file timely counterclaims is not excusable. The first two factors are largely neutral. The 19-day delay in filing a motion for leave to file untimely counterclaims was not so egregious as to seriously prejudice the FDIC or impact these judicial proceedings. And although the defendants received a total of five extensions of time to file their motion to dismiss and their reply brief, there is no specific evidence that they delayed filing the counterclaims in bad faith. But the third factor weighs heavily against finding excusable neglect. "[F]ault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable." *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (citation omitted). The defendants assert that the counterclaims were filed late because someone had miscalendared the due date as October 10, 2024 rather than the actual due date of September 27, 2024. This excuse does not constitute

excusable neglect for two reasons. First, the failure to correctly calendar the deadline was not an isolated incident. The defendants miscalendared the September 11, 2024 deadline as well. A single mistake could be forgiven, *see Pioneer*, 507 U.S. at 388 ("Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."), but a pattern of neglect is not excusable. Second, the act of mistakenly calendaring the due date for October 10, 2024 does not fully explain the defendants' delay. The court notified the defendants that the answer deadline had passed on October 2, 2024. Rather than moving for an extension of time in short order, the defendants waited another 14 days before seeking leave to file untimely counterclaims. Moreover, the defendants inexplicably filed the counterclaims six days after the miscalendared October 10 due date.

In short, the defendants have no good excuse for waiting until 19 days after the answer deadline to file its motion for leave to file the untimely counterclaims. Weighing the *Pioneer* factors, including the crucial fault factor, the court finds that the defendants have not met the excusable neglect standard for filing their untimely counterclaims.

## II. REQUEST TO FILE AN UNTIMELY ANSWER

The defendants' request to file an untimely answer to the FDIC's complaint warrants a different analysis. If the court denies leave for the defendants to file an answer, the FDIC will be entitled to entry of default and a default judgment in its favor. After the inevitable entry of default, however, the defendants would be entitled to set aside the default "for good cause" under Rule 55(c). Where, as is the case here, the defendants are actively participating in the litigation, it would be an unnecessarily waste of time and resources to deny the motion to file an untimely answer under the excusable neglect standard, enter a default, and then require the parties to brief a motion

5

for relief from the default under Rule 55(c) good cause standard. Accordingly, the court considers whether there would be good cause for relief from default under Rule 55(c) in deciding whether to allow the defendants to avoid a default by permitting them to file the untimely answer.

The good cause requirement to set aside a default (or in this case, to avoid a default) is a less onerous standard than excusable neglect under Rule 6(b)(1)(B). *Cf. Dennis Garberg & Assocs., Inc. v. Pack–Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997) (comparing good cause under Rule 55(c) to excusable neglect under Rule 60(b)). Additionally, courts prefer to resolve cases on the merits rather than by default. *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970). "The principal factors in determining whether a defendant has met the good cause standard are (1) whether the default was the result of culpable conduct of the defendant, (2) whether the plaintiff would be prejudiced if the default should be set aside, and (3) whether the defendant presented a meritorious defense." *Hunt v. Ford Motor Co.*, 65 F.3d 178, 1995 WL 523646, at *3 (10th Cir. 1995) (unpublished table opinion). These factors are not "talismanic" requirements. *Id.* Courts need not consider all of these factors and may take into account other considerations. *Id.*

The three *Hunt* factors weigh in favor of permitting the defendants to file their late answer in order to prevent a default. "Generally a party's conduct will be considered culpable only if the party defaulted willfully or has no excuse for the default." *United States v. Timbers Pres., Routt Cnty., Colo.*, 999 F.2d 452, 454 (10th Cir. 1993) (analyzing the culpable conduct factor under the more onerous test applied to Rule 60(b) motions). As discussed above, the defendants have not provided a reasonable excuse for waiting until October 16, 2024 to file their answer. But they have explained that they missed the September 27, 2024 answer deadline due to a calendaring mishap. Because missing the September 27 deadline is the triggering event for a potential default, the

defendants have at least provided an excuse for their failure to comply with the answer deadline. Accordingly, the defendants have shown the absence of culpable conduct under the good cause standard—a lower bar than the reason-for-the-delay factor under the excusable neglect standard. Moreover, the FDIC has not shown undue prejudice if the court declines to enter a default. *See Alternative Inv. Sols. (Gen.) Ltd. v. Next Up Funding, Inc.*, No. 12 CIV. 6612 JFK, 2013 WL 417405, at *3 (S.D.N.Y. Feb. 4, 2013) (ruling that prejudice "refers to more than simple delay. 'Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" (citations omitted)). Finally, the defendants have presented a meritorious defense. In determining whether a defendant has established a meritorious defense, "[t]he parties do not litigate the truth of the claimed defense in the motion hearing." *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978). "Rather, the court examines the allegations contained in the moving papers to determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense to the action." *Id.* The defendants argued that the FDIC's claims are barred by the three-year statute of limitations for conversion. Although the court ruled that this statute of limitations defense could not be resolved on a motion to dismiss, the defendants can raise this issue in a motion for summary judgment or at trial. ECF No. 53 at 5.

      Thus, considering the three *Hunt* factors in conjunction with the policy favoring the resolution of claims on the merits rather than by default, the court finds that there is good cause to permit the defendants to file an untimely answer to the FDIC's complaint in order to avoid a default.

## CONCLUSION

For the above-stated reasons, the court grants the defendants' motion to the extent that they request leave to file an untimely answer and denies the motion to the extent that the defendants request leave to file untimely counterclaims. Therefore, the court orders as follows:

1) The court STRIKES the defendants' answer and counterclaims. ECF No. 62.

2) The court GRANTS the defendants leave to file an answer by July 11, 2025. If the defendants do not file an answer by this date, the FDIC may move for an entry of default.

3) The court DENIES leave for the defendants to file untimely counterclaims.

DATED July 2, 2025.

                    BY THE COURT

                    _____
                    Jill N. Parrish
                    United States District Court Judge